STATE OF NORTH CAROLINA v. JAMIEN M. MARSHALL

No. COA09-1416

(Filed 17 August 2010)

**1. Criminal Law— instruction—constructive possession**

The trial court committed prejudicial error in a possession of stolen goods case by instructing the jury on constructive possession. The evidence supported either actual possession or no possession, and such instruction served to relieve the State of its burden of proof.

**2. Possession of Stolen Property— possession of stolen goods—larceny of motor vehicle—motion to dismiss—sufficiency of evidence**

The trial court erred by denying defendant's motions to dismiss·the charges of possession of stolen goods and larceny of a motor vehicle. There was no evidence that defendant actually or constructively possessed the stolen vehicle, and the jury's verdict as to possession of stolen goods was fatally inconsistent with its verdict of not guilty of larceny of the same vehicle.

**3. Appeal and Error— additional arguments not considered —mootness**

Defendant's additional arguments were not considered based upon the trial court's reversal of the possession of stolen goods conviction.

Appeal by defendant from judgment entered 20 May 2009 by Judge Christopher M. Collier in Mecklenburg County Superior Court. Heard in the Court of Appeals 25 March 2010.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General P. Bly Hall, for the State.*

*Daniel F. Read, for defendant-appellant.*

JACKSON, Judge.

Jamien M. Mafrshall ("defendant") appeals his 20 May 2009 conviction for possession of stolen goods. For the reasons stated herein, we reverse.

On 27 March 2008, Frederick Stewart ("Stewart") drove his 2005 Chevy Suburban ("Suburban") to a gas station in order to purchase

STATE v. MARSHALL

[206 N.C. App. 580 (2010)]

some cigarettes. Stewart left the Suburban running while he went inside. When he left the convenience store, the Suburban was no longer there. Stewart went back inside to call the police and use his OnStar system to track the Suburban's location.

Officer Paul Blackwood ("Officer Blackwood") responded to Stewart's call. Once he arrived at the gas station, Officer Blackwood viewed the store's surveillance video footage and recognized defendant on the video. Officer Blackwood knew defendant "[w]ell enough to know him by face, by name, general area, where he hangs out, [and] his residence." According to Officer Blackwood, the video showed defendant exiting the convenience store after Stewart entered it. Defendant then walked behind a "white vehicle" before "running back towards the [Suburban]." The Suburban then left the gas station traveling in the direction of defendant's house. No one else appeared to be near the pumps or dressed in dark clothing as defendant had been.

After viewing the video, Officer Blackwood notified the primary officer that he thought they would find the Suburban at defendant's residence on Booker Avenue. Around this time, the officers also learned that OnStar had located the Suburban on Booker Avenue. The police went to Booker Avenue and found the Suburban parked on the street outside defendant's residence; this occurred within an hour or hour and a half of the larceny.

Defendant was charged with larceny of a motor vehicle and possession of stolen goods. At his 20 May 2009 trial, defendant testified that he drove his vehicle to the gas station that day, accompanied by two other people—LaQuanda and Jeremy. As defendant was pumping his gas, Jeremy jumped out of the car and into the Suburban. Defendant then drove to his girlfriend's house and had no knowledge that the Suburban subsequently was parked on Booker Avenue at his residence. Defendant did not confront Jeremy about the crime or tell anyone his version of events.

At trial, the State requested a jury instruction on constructive possession, to which defense counsel objected. Defense counsel stated, "I just don't think it applies, and it's obvious somebody possessed it. I don't see constructive anywhere." The trial court agreed with defense counsel and sustained the objection. However, once the jury began its deliberations, it sent two questions to the trial court: "(1) What is [the] legal definition of possession? [and] (2) If stolen goods are on your property[,] are you guilty of possession?" The trial

court heard from both attorneys. Defense counsel reiterated his view that "either [defendant's] the one who took [the Suburban] and he possessed it because he took it, or there is no constructive possession in this particular case." The trial court responded, "I understand your point. The only thing I can figure is perhaps they could believe that he did not drive the car away from the convenience store without his property. I don't know." The trial court then called the jury back to the courtroom and instructed it on constructive possession.

On 20 May 2009, the jury found defendant guilty of possession of stolen goods. However, it found defendant not guilty of larceny of a motor vehicle. Defendant appeals.

**[1]** Defendant's second argument, which we address first, is that the trial court erred by instructing the jury as to constructive possession, because the evidence supports either actual possession or no possession, there exists no evidentiary basis for an instruction as to constructive possession, and such instruction served to relieve the State of its burden of proof. We agree.

When the appealing party properly objects to jury instructions at trial, we review the instructions as a whole in order to ascertain whether, in context, an erroneous instruction likely misled the jury. We previously have explained that

> "[t]he [jury] charge will be held to be sufficient if it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed . . . . The party asserting error bears the burden of showing that the jury was misled or that the verdict was affected by [the] instruction. Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury."

*State v. Hall*, 187 N.C. App. 308, 316, 653 S.E.2d 200, 207 (2007) (quoting *State v. Blizzard*, 169 N.C. App. 285, 296-97, 610 S.E.2d 245, 253 (2005)) (emphasis removed).

"A person is in constructive possession of a thing when, while not having actual possession, he has the intent and capability to maintain control and dominion over that thing." *State v. Beaver*, 317 N.C. 643, 648, 346 S.E.2d 476, 480 (1986) (citing *State v. Williams*, 307 N.C. 452, 455, 298 S.E.2d 372, 374 (1983)). "As with other questions of intent,

STATE v. MARSHALL

[206 N.C. App. 580 (2010)]

proof of constructive possession usually involves proof by circumstantial evidence." *Id.*

" 'Where [contraband is] found on the premises under the control of an accused, this fact, in and of itself, gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury on a charge of unlawful possession.' " *State v. McNeil*, 359 N.C. 800, 809, 617 S.E.2d 271, 277 (2005) (quoting *State v. Butler*, 356 N.C. 141, 146, 567 S.E.2d 137, 140 (2002)) (alteration in original). " 'However, unless the person has exclusive possession of the place where the [contraband is] found, the State must show other incriminating circumstances before constructive possession may be inferred.' " *Id.* at 810, 617 S.E.2d at 277 (quoting *State v. Davis*, 325 N.C. 693, 697, 386 S.E.2d 187, 190 (1989)) (emphasis removed).

In the case *sub judice*, defendant argues that, because the jury found him not guilty of larceny as to the Suburban, it must have found that he did not actually possess the Suburban at the gas station. Therefore, the only time period in which defendant could have possessed the vehicle—in order to meet the possession element of possession of a stolen good—was when the Suburban was parked on Booker Avenue outside defendant's residence. Defendant contends that the Suburban's location on a public street is insufficient to demonstrate an "intent and capability to maintain control and dominion over" the vehicle, *Beaver*, 317 N.C. at 648, 346 S.E.2d at 480 (citing *State v. Williams*, 307 N.C. 452, 455, 298 S.E.2d 372, 374 (1983)), and that the State presented no other evidence to support constructive possession.

Although the State points us to certain evidence—a surveillance tape that showed defendant, identified by Officer Blackwood, at the gas station around the time that the Suburban was stolen; defendant's opportunity to observe the running, unoccupied Suburban; the fact that the Suburban was not stolen until defendant exited the gas station convenience store; and the subsequent discovery of the Suburban parked on the public street outside defendant's residence —as sufficient to demonstrate "other incriminating circumstances," this evidence implicates defendant's opportunity to steal the vehicle, not defendant's "intent and capability to maintain control and dominion over" the public street on which the Suburban was discovered.

In *Beaver, supra*, we found that there existed other incriminating circumstances sufficient to allow the issue of constructive possession to go to the jury. 317 N.C. 643, 346 S.E.2d 476. In that case,

marijuana was growing in a field near the defendant's house, but the defendant did not own the field. *Id.* at 649, 346 S.E.2d at 480. Nonetheless, our Supreme Court held that several circumstances permitted an inference of constructive possession: (1) police observed defendant in coveralls coming from the direction of the marijuana field; (2) defendant demonstrated knowledge of the field by directing officers as to the quickest way back to the house from the field and warning them of various obstacles along the path; (3) when police took defendant back to the house, defendant's mother stated, "I told you you'd get caught. I told you not to mess with that stuff[,]" to which defendant replied, "Shut up Mama, shut up Mama. They hadn't caught me in the fields. They hadn't caught me doing anything. Shut up[;]" and (4) "the fact that the path was cut by power machinery from the shed to the barn through approximately fifty-five yards of high dense weeds[.]" *Id.* at 649-50, 346 S.E.2d at 480-81. The *Beaver* Court concluded that there existed "substantial evidence that the defendant was in constructive possession of the marijuana seized at the time of his arrest." *Id.* at 649, 346 S.E.2d at 480.

Whereas the State's evidence in *Beaver* either demonstrated or implied that the defendant knew of, had access to, and actually accessed the secluded marijuana field in question, the evidence here shows only that defendant had an opportunity to steal the Suburban from the gas station. It neither demonstrates nor implies that defendant was aware that the Suburban was parked outside his residence, that he was at home during the hour or so during which the Suburban would have arrived on his street, that he regularly utilized that location for his personal use, nor that that portion of the public street was any more likely to be under his control than the control of other members of the public or other residents of that street. The Suburban's location on a public street clearly was not under the exclusive control of defendant, and the additional circumstances recounted by the State do not support an inference that defendant had "the intent and capability to maintain control and dominion over" the Suburban parked there. *Beaver*, 317 N.C. at 648, 346 S.E.2d at 480 (citing *State v. Williams*, 307 N.C. 452, 455, 298 S.E.2d 372, 374 (1983)). We hold that the trial court erred in instructing the jury on constructive possession because the evidence did not support such an instruction.

Although defendant has shown that the trial court erred in instructing the jury on constructive possession, we still must determine whether " 'such error was likely, in light of the entire charge, to

mislead the jury.' " *Hall*, 187 N.C. App. at 316, 653 S.E.2d at 207 (citation omitted) (emphasis removed). We think that it was.

The trial court provided the instruction on constructive possession only following a question from the jury. The instruction was isolated from the prior instructions, which potentially gave it greater weight. Considering that the jury was concerned about the specifics of possession, an instruction that detailed a standard less stringent than actual possession likely influenced the jury's determination that defendant's actions met the definition of possession. Therefore, the trial court's error was prejudicial, and defendant's conviction for possession of stolen goods is reversed.

**[2]** We also agree with defendant's third and fourth arguments—that the trial court erred by denying his motions to dismiss as there was insufficient evidence that he actually or constructively possessed the stolen vehicle and that the trial court erred by accepting the jury verdict as to possession of stolen goods because it was fatally inconsistent with its verdict of not guilty of larceny of the same vehicle— based upon our analysis *supra*.

**[3]** Because we reverse based upon defendant's second argument, we do not address his remaining contention—that the trial court committed plain error by allowing Officer Blackwood to testify that he knew defendant from numerous contacts.

Reversed.

Judges ELMORE and STROUD concur.