STATE OF NORTH CAROLINA v. TERECK DANIELLE PERRY, Defendant

No. COA12-322

(Filed 18 September 2012)

**Firearms and Other Weapons—possession of firearm by felon—jury question—possession—plain error**

The trial court committed plain error in a possession of a firearm by a felon case by failing to further inquire into and answer the jury's questions specifically regarding possession. The error had a probable impact on the jury's finding of guilt.

STATE v. PERRY

[222 N.C. App. 813 (2012)]

Appeal by defendant from judgment entered on or about 31 August 2011 by Judge Paul G. Gessner in Superior Court, Wake County. Heard in the Court of Appeals 27 August 2012.

*M. Alexander Charns, for defendant-appellant.*

*Attorney General Roy A. Cooper, III, by David L. Elliot, for the State.*

STROUD, Judge.

Defendant appeals his convictions for possession of a firearm by a felon and attaining the status of habitual felon. For the following reasons, we grant defendant a new trial.

## I. Background

The State's evidence tended to show that on 26 June 2009, law enforcement officers from the Raleigh Police Department executed a search warrant. Once inside the apartment, the officers found numerous people along with a shotgun in a closet and a pistol in a dresser. The officers noticed defendant sitting in a car outside of the apartment; they brought defendant into the apartment where they read him his Miranda rights, strip searched him, and then questioned him. Defendant told the officers the apartment was his parents' and "he did not know where the guns came from, but he'd never seen them in here" though "he [had seen] the guns in the parking lot, and that they were all looking at them." The officers arrested defendant and took him back to the police department where he was questioned.

When asked about "the first time he saw the pistol" defendant responded "that he'd seen it a couple – he'd seen a couple people playing with it, there was a lot of people playing with the gun. And he'd seen it about a week ago[.]" Defendant stated that "Ra-Ra[,]" another man, had brought the pistol to the apartment "about a week ago[.]" The officers then questioned defendant about the shotgun, and defendant responded "the shotgun's been in there for a long time. He said that it's probably been there for two years, and the gun, that shotgun, used to be in the next apartment, apartment 10." When "specifically" asked about "handling both the pistol and the shotgun" defend-ant "said he was playing with them. He denied owning them, but he had touched them[.]" Defendant stated that he had touched the guns "a couple days ago" without providing "an exact date and time."

Defendant was indicted for two counts of possession of a firearm by a convicted felon, one count as to the pistol and one count as to

the shotgun; possession of a stolen firearm as to the pistol; and attaining the status of a habitual felon. During defendant's trial by jury, at the close of the State's evidence, defendant made a "motion to dismiss for insufficiency of the evidence"[,] which the trial court allowed as to "the charge of possession of the shotgun"[,] but denied as to "the charge of possession of the pistol" and "the possession of stolen goods." The jury found defendant guilty of possession of a firearm by a convicted felon, specifically the pistol ("possession of the pistol") and attaining the status of habitual felon. Defendant was sentenced to 60 to 81 months imprisonment on both convictions. Defendant appeals.

## II. Jury Instructions

Although defendant has raised issues regarding his motion to dismiss, a specific portion of the jury instructions, the admissibility of certain evidence, and a motion to suppress, we deem defendant's argument regarding the jury's question to the trial court to be dispositive. Once jury deliberations began, the jury sent a note to the trial court asking, "Can we see the definition of possession and the list of criteria?" The trial court then provided the jury with a copy of the jury instructions. After receiving the jury instructions, the jury returned the instructions and the trial court noted that the jury had

> highlighted the language which reads, a person has actual possession of a firearm, and they have—and then in the next paragraph, where it says a person has constructive possession of a firearm if he does not have it on the—and they have a note, date of arrest or can previous days be considered. And it says does playing with constitute power and intent to control disposition.

The trial court then instructed the jury, without objection before or after the instructions,

> [T]he bailiff has handed me back the copy of the jury instructions that I provided to you folks that you all done some marking and writing on page number three. I have reviewed what you have handed back, particularly the—I'm going to address it I guess in two parts. The first part is the highlighted language. A person has actual possession of a firearm and the highlighted language person has constructive possession of a firearm if the person does not have it on them [sic]. And then there appears to be some question or language that reads day of arrest or can previous days be considered.

> In my discretion I'm unable to determine exactly what it is that you're asking for, looking at the form of the question or the writing that you handed back.

> So I'm going to charge you that you are to apply your common understandings from your everyday use of the words that are contained within the jury instructions and the law that I've charged you, and apply that to the evidence that has been presented.

> With respect to the question that's on the bottom of the page, does playing with constitute power and intent to control disposition.

> In my discretion, I'm going to charge you that you have heard the evidence in this case and you've heard the evidence and you've heard the law, and it is once again your duty as a jury to answer the question that's been proposed based on the evidence and the law that I've provided for you.

> That is my instructions to you. I'm going to give this back to the bailiff, ask you to return to the jury room and resume your deliberations, once you're all present.

Here, the jury's confusion as to the question of possession was understandable. From a thorough review of the transcript, it appears that the State might have proceeded under two different theories of possession, both actual and constructive. Indeed, the State could have sought to prove that (1) defendant had actually possessed the guns "a couple days" before 26 June 2009 and/or (2) defendant had constructively possessed the guns on 26 June 2009. Nonetheless, the State ultimately chose to pursue only constructive possession, but the trial court instructed the jury on both actual and constructive possession without any objection from either side.

As to actual possession, defendant was indicted for possessing the guns on 26 June 2009, the day of the search of the apartment; as to this date, the record reveals no evidence of actual possession. However, defendant had admitted that he had been "playing with" the guns "a couple days" before 26 June 2009. Nevertheless, during its closing argument, the State told the jury,

> And I believe that Judge Gessner will tell you that actual possession is when it's on the person. When the person is aware of its presence and either alone or together with others, has both the power and intent to control its disposition and use.

*Those aren't the facts in this case. The weapon wasn't found on the Defendant. It's not an actual possession of the weapon. It's a constructive possession. . . .*

. . . .

. . . And again, there is the actual possession and there is the constructive possession. And this Defendant constructively possessed that firearm.

(Emphasis added.) Thus, despite the evidence of defendant's statements, the State repeatedly told the jury that it should not consider actual possession in determining whether defendant had wrongfully possessed the pistol because this was only a case of constructive possession. As to constructive possession, the indictment stated the date of "on or about June 26, 2009" indicating that the State was pursuing a theory of constructive possession. Also, the evidence provided by the State focused on the date of 26 June 2009; the date defendant allegedly constructively possessed the guns.

Defendant now contends that

[t]he trial court erred or committed plain error by failing to answer the jury's questions about whether the accused could be convicted for "playing with the weapon" on a day other than that charged in the indictment, creating a unanimity issue.

A. Standard of Review

In *State v. Tadeja*, this Court stated,

[b]ecause defendant failed to object to the jury instructions in this case, this . . . [issue] must be analyzed under the plain error standard of review. Plain error with respect to jury instructions requires the error be so fundamental that (i) absent the error, the jury probably would have reached a different verdict; or (ii) the error would constitute a miscarriage of justice if not corrected. Further, in deciding whether a defect in the jury instruction constitutes plain error, the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt.

191 N.C. App. 439, 446, 664 S.E.2d 402, 408 (2008) (citations and quotation marks omitted).

B.  Elements of N.C. Gen. Stat. § 14-415.1(a)

> N.C. Gen. Stat. § 14–415.1(a) provides, in pertinent part, that it shall be unlawful for any person who has been convicted of a felony to purchase, own, possess, or have in his custody, care, or control any firearm. Thus, the State need only prove two elements to establish the crime of possession of a firearm by a felon: (1) defendant was previously convicted of a felony; and (2) thereafter possessed a firearm.

*State v. Best,* _____ N.C. App. _____, _____, 713 S.E.2d 556, 561 (citation, quotation marks, and brackets omitted), *disc. review denied,* 365 N.C. 361, 718 S.E.2d 397 (2011). The jury's question went to the element of possession.

> Possession of any item may be actual or constructive. Actual possession requires that a party have physical or personal custody of the item. A person has constructive possession of an item when the item is not in his physical custody, but he nonetheless has the power and intent to control its disposition.

*State v. Alston,* 131 N.C. App. 514, 519, 508 S.E.2d 315, 318 (1998) (citations omitted).

1.  Actual Possession

As to actual possession, the State's evidence showed that defendant stated that "a couple days" before 26 June 2009 he "was playing with" and "had touched" the guns. Without addressing any questions regarding the *corpus delicti* rule or the date on the indictment, we note that defendant's statement that he "was playing with" the guns likely constituted "substantial evidence" for purposes of the instruction on actual possession reaching the jury. *See State v. Johnson,* 203 N.C. App. 718, 724, 693 S.E.2d 145, 148 (2010) (noting there must be substantial evidence of each element of the crime charged and of defendant being the perpetrator of the crime charged in order for the State to survive a motion to dismiss, and thus have the charge submitted to the jury)

2.  Constructive Possession

As to constructive possession, where "the defendant did not have exclusive control of the location where contraband is found, constructive possession of the contraband materials may not be inferred without other incriminating circumstances." *State v. Clark,* 159 N.C. App. 520, 525, 583 S.E.2d 680, 683 (2003) (citation and quotation

marks omitted). Here, the State's evidence showed that the apartment where the guns were found was not defendant's apartment and had numerous people in it at the time the guns were found; although defendant was not one of the numerous people actually even present in the apartment when the guns were found. Furthermore, the State presented no evidence that defendant was staying at the apartment. Under these facts, the State would need to present evidence of "other incriminating circumstances" which might connect defendant to the guns in some way for the trial court to properly instruct the jury on constructive possession. *Id.*

The State contends that the evidence of constructive possession of the pistol was:

> Defendant told police that: (1) he had played with the gun; (2) his fingerprints would be found on the gun; (3) he saw the gun in his parents' apartment because he saw it when Ra-Ra brought it in the house.

The fact that "[d]efendant told police that . . . he had played with the gun" and that "his fingerprints would be found on the gun" is evidence of actual possession at the time he "played with" the pistol and not evidence of constructive possession a few days later. *See State v. Beaver*, 317 N.C. 643, 648, 346 S.E.2d 476, 480 (1986) ("A person is in constructive possession of a thing when, *while not having actual possession,* he has the intent and capability to maintain control and dominion over that thing." (emphasis added)). Thus, the State's evidence of constructive possession consists of the fact that defendant "saw the gun in his parents' apartment because he saw it when Ra-Ra brought it in the house." The fact that defendant saw a third party bring a pistol into an apartment which did not belong to him does not demonstrate that defendant had "the power and intent to control [the pistol's] disposition[,]" particularly in light of the fact that defendant was not even in the apartment at the time the pistol was discovered and there was no evidence that the defendant stayed in the apartment. *Alston*, 131 N.C. App. at 519, 508 S.E.2d at 318; *see State v. Marshall*, 206 N.C. App. 580, 584, 696 S.E.2d 894, 898 (2010) ("The evidence here shows only that defendant had an opportunity to steal the Suburban from the gas station. It neither demonstrates nor implies that defendant was aware that the Suburban was parked outside his residence, that he was at home during the hour or so during which the Suburban would have arrived on his street, that he regularly utilized that location for his personal use, nor that that portion of the public street was any more likely to be under his control than the control of

other members of the public or other residents of that street. The Suburban's location on a public street clearly was not under the exclusive control of defendant, and the additional circumstances recounted by the State do not support an inference that defendant had the intent and capability to maintain control and dominion over the Suburban parked there. We hold that the trial court erred in instructing the jury on constructive possession because the evidence did not support such an instruction." (citation and quotation marks omitted)). Accordingly, we conclude that the jury was erroneously instructed on constructive possession.

C. Analysis

When we "examine the entire record[,]" as we must, *Tadeja*, 191 N.C. App. at 446, 664 S.E.2d at 408, we understand why the jury was confused. The jury was presented with an instruction on both actual and constructive possession. The evidence could only possibly support an instruction on actual possession. However, the State specifically told the jury *not* to consider actual possession. While the State's arguments are neither evidence nor jury instructions, they still likely affected the jury's consideration of the element of possession. This left the jury to consider only constructive possession, which the evidence did not support, and thus such instruction should never have been given. In light of this odd situation, we do believe that the trial court's failure to further inquire into and answer the jury's questions specifically regarding possession "had a probable impact on the jury's finding of guilt" that constituted plain error. *Id.* Indeed, it is entirely possible that this error may have changed the outcome of the case, as we ourselves, even with the luxuries of a written record and ample time to research and consider the instructions and issues, found the instructions confusing in the context of the evidence and arguments.

III. Conclusion

We conclude that the trial court's failure to adequately address the jury's questions resulted in plain error. Accordingly, we grant defendant a new trial.

NEW TRIAL.

Chief Judge MARTIN and Judge GEER concur.